1

2

3                    UNITED STATES DISTRICT COURT

4                  NORTHERN DISTRICT OF CALIFORNIA

5

6    YVONNE M.,[1]                           Case No.  21-cv-05550-TSH

7              Plaintiff,

8         v.                                 **ORDER RE: CROSS-MOTIONS FOR
                                             SUMMARY JUDGMENT**
9    KILOLO KIJAKAZI,
                                             Re: Dkt. Nos. 20, 24
10             Defendant.

11

12                          **I.    INTRODUCTION**

13        Plaintiff Yvonne M. moves for summary judgment to reverse the decision of Defendant

14   Kilolo Kijakazi, Acting Commissioner of Social Security, denying Plaintiff's claim for disability

15   benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 20.  Defendant cross-

16   moves to affirm.  ECF No. 24.  Pursuant to Civil Local Rule 16-5, the matter is submitted without

17   oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and

18   relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's

19   cross-motion for the following reasons.[2]

20                       **II.    PROCEDURAL HISTORY**

21        On February 14, 2019, Plaintiff filed an application for disability benefits, alleging a

22   disability onset date of December 1, 2011.  AR 15, 171-72.  The application was initially denied

23   on March 26 and again on reconsideration on July 22, 2019.  AR 79-89, 110-16.  An

24   Administrative Law Judge ("ALJ") held a hearing on October 29, 2020 and issued an unfavorable

25

26   _____

27   [1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the
     recommendation of the Committee on Court Administration and Case Management of the Judicial
     Conference of the United States.
28   [2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF
     Nos. 8, 11.

1    decision on January 14, 2021.  AR 12-23.  The Appeals Council denied Plaintiff's request for

2    review on June 3, 2021.  AR 1-6.  Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

3                              **III.   ISSUES FOR REVIEW**

4           Plaintiff raises three issues on appeal: (1) whether the ALJ erred in the assessment of the

5    medical evidence; (2) whether the ALJ's adverse assessment of Plaintiff's subjective symptom

6    testimony was supported by substantial evidence; and (3) whether the ALJ erred by failing to

7    consider lay witness testimony.

8                             **IV.   STANDARD OF REVIEW**

9           42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision

10   to deny disability benefits, but "a federal court's review of Social Security determinations is quite

11   limited."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  "An ALJ's disability

12   determination should be upheld unless it contains legal error or is not supported by substantial

13   evidence."  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted).

14   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

15   support a conclusion."  *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019)

16   (simplified).  It means "more than a mere scintilla, but less than a preponderance" of the evidence.

17   *Garrison*, 759 F.3d at 1009 (citation omitted).

18          The Court "must consider the entire record as a whole, weighing both the evidence that

19   supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm

20   simply by isolating a specific quantum of supporting evidence."  *Id.* (citation omitted).  "The ALJ

21   is responsible for determining credibility, resolving conflicts in medical testimony, and for

22   resolving ambiguities."  *Id.* at 1010 (citation omitted).  If "the evidence can reasonably support

23   either affirming or reversing a decision," the Court may not substitute its own judgment for that of

24   the ALJ."  *Id.* (citation omitted).

25          Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is

26   harmless.  *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012).  "[A]n error is harmless

27   so long as there remains substantial evidence supporting the ALJ's decision and the error does not

28   negate the validity of the ALJ's ultimate conclusion."  *Id.* at 1115 (simplified).  But "[a] reviewing

United States District Court
Northern District of California

2

1  court may not make independent findings based on the evidence before the ALJ to conclude that

2  the ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492.  The Court is "constrained to

3  review the reasons the ALJ asserts." *Id.* (simplified).

## V.   DISCUSSION

### A.   Framework for Determining Whether a Claimant Is Disabled

A claimant is considered "disabled" under the Social Security Act if two requirements are
met.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  First, the
claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of
any medically determinable physical or mental impairment which can be expected to result in
death or which has lasted or can be expected to last for a continuous period of not less than 12
months." 42 U.S.C. § 423(d)(1)(A).  Second, the impairment or impairments must be severe
enough that the claimant is unable to perform previous work and cannot, based on age, education,
and work experience "engage in any other kind of substantial gainful work which exists in the
national economy." *Id.* § 423(d)(2)(A).

The regulations promulgated by the Commissioner of Social Security provide for a five-
step sequential analysis to determine whether a Social Security claimant is disabled.  20 C.F.R. §
404.1520.  The claimant bears the burden of proof at steps one through four.  *Ford v. Saul*, 950
F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial
gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that
involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (internal quotations and
citation omitted).  Here, the ALJ determined Plaintiff had not performed substantial gainful
activity since December 1, 2011.  AR 17.

At step two, the ALJ decides whether the claimant's impairment or combination of
impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the
claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148
(quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.
20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

United States District Court
Northern District of California

United States District Court
Northern District of California

1   impairments: trace scoliosis lumbar, spondylosis thoracic, chronic pain syndrome, and obstructive

2   sleep apnea.  AR 17.

3          At step three, the ALJ evaluates whether the claimant has an impairment or combination of

4   impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the

5   "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

6   describe impairments that are considered "to be severe enough to prevent an individual from doing

7   any gainful activity."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective

8   medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3).

9   "For a claimant to show that his impairment matches a listing, it must meet all of the specified

10  medical criteria.  An impairment that manifests only some of those criteria, no matter how

11  severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a

12  claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent

13  to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering

14  age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff

15  did not have an impairment or combination of impairments that meets the listings.  AR 19.

16         If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses

17  the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do

18  despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to

19  perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,

20  that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do

21  it."  20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can

22  perform past relevant work, the claimant is not disabled.  *Id.* § 404.1520(f).  Here, the ALJ

23  determined Plaintiff has the RFC to perform light work.[3]  AR 19.  Based on this RFC, the ALJ

24

25  _____

    [3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of
    objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this

26  category when it requires a good deal of walking or standing, or when it involves sitting most of
    the time with some pushing and pulling of arm or leg controls.  To be considered capable of

27  performing a full or wide range of light work, you must have the ability to do substantially all of
    these activities.  If someone can do light work, we determine that he or she can also do sedentary

28  work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for
    long periods of time."  20 C.F.R. § 416.967(b).

determined Plaintiff could perform past relevant work as an ad taker/receptionist (composite job) and as a telephone solicitor.  AR 22.  Based on this finding, the ALJ found Plaintiff was not disabled and therefore did not proceed to step five.  AR 22-23.

**B.     Medical Evidence**

Plaintiff argues the ALJ erred by not weighing evidence from Harris Pain Clinic and by not adequately considering her fibromyalgia in the context of SSR 12-2p.

### 1.     Legal Standard

For Social Security claims filed after March 27, 2017, the ALJ is required to assess the persuasiveness of the medical opinion using the regulations outlined in 20 C.F.R. §§ 404.1520c and 416.920c.  *See Woods v. Kijakazi*, 32 F.4th 785, 791-93 (9th Cir. 2022) (embracing the Commissioner's new regulatory framework for evaluating medical opinions).  Under these new regulations, the ALJ is asked to consider five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other facts including but not limited to a medical source's familiarity with the other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements.  *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  Of these five, the ALJ must address supportability and consistency in each assessment and may, but is not required to, explain how they considered the remaining three factors.  *See* 20 C.F.R. §§ 404.1520c(a)(2), 416.920c(a)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  *Woods*, 32 F.4th at 791-92; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be").  "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'"  *Woods*, 32 F.4th at 792; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim,

5

the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be").

The new regulations eschew the former hierarchy of medical opinions and no longer require the ALJ to afford greater weight to the opinions of treating physicians. *See Woods*, 32 F.4th at 787; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"). Instead, an ALJ is free to consider each medical opinion equally and may find an opinion more persuasive than others provided that substantial evidence supports such a finding. When rejecting a medical opinion as unsupported or inconsistent, the ALJ is required to provide an explanation supported by substantial evidence. *Woods*, 32 F.4th at 792. If the ALJ does so, then a court may not overturn the ALJ's decision "unless it is . . . based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).

### 2. Harris Pain Clinic

In 2016 Plaintiff was treated by a chiropractor at the Harris Pain Clinic. AR Exhibit 2F consists of six pages of notes on a check-box form from a chiropractor at the clinic that treated Plaintiff in March 2016 and once in September 2016, after she fell and bruised her left buttock. AR 344-49. The chiropractor recorded Plaintiff's self-reported symptoms, history, and alleged fibromyalgia diagnosis, and noted some myofascial trigger points on examinations.

Plaintiff notes that the ALJ's decision does not reference any records from the Harris Pain Clinic and argues "[t]he failure to consider these records and these findings does not satisfy the standard for considering medical evidence." Pl.'s Mot. at 5. However, the record does not contain a medical opinion from the Harris Pain Clinic; it contains only treatment notes that do not identify any functional limitations or restrictions. Under the regulations, a medical opinion is "a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions" in her ability to perform physical or mental work activities. 20 C.F.R. § 404.1513(a)(2) (2017). Plaintiff does not point to any statements in these notes about what she could still do despite her impairments or whether she had limitations or restrictions in her ability to perform work activities. Treatment

United States District Court
Northern District of California

notes that do not address Plaintiff's functional abilities or limitations are not considered medical opinions the ALJ needed to evaluate. *See id.*; 20 C.F.R. § 404.1520c (2017); *Champagne v. Colvin*, 582 F. App'x 696, 697 (9th Cir. 2014) (rejecting assertion that ALJ improperly disregarded "opinions" where providers did not opine on claimant's functional limitations); *R.S. v. Kijakazi*, 2022 WL 888439, at *9 (N.D. Cal. Mar. 25, 2022) ("Plaintiff's treatment providers did not address R.S.'s limitations and restrictions and therefore there were no medical opinions from those providers that ALJ was required to evaluate for persuasiveness.") (citing *Champagne*); *Cuyson v. Berryhill*, 2017 WL 3913874, at *4 (E.D. Cal. Sept. 7, 2017) ("[S]tatements that do not address the claimant's functional limitations need not be weighed by the ALJ."), *aff'd sub nom. Cuyson v. Saul*, 795 F. App'x 535 (9th Cir. 2020). As such, the ALJ's decision must not be disturbed.

### 3. Fibromyalgia

Plaintiff also argues the ALJ's failure to consider notes from the Harris Pain Clinic "and, quite frankly, Dr. Basch, who also treated [her] symptoms . . . arose from an apparent fundamental misunderstanding of fibromyalgia." Pl.'s Mot. at 5. However, the Court finds these records do not establish a basis for disturbing the ALJ's findings.

"Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (quotation marks and citation omitted). Symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with [the] disease." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Individuals suffering from fibromyalgia have normal "muscle strength, sensory functions, and reflexes." *Revels*, 874 F.3d at 656. Further, "there are no laboratory tests to confirm the diagnosis." *Benecke*, 379 F.3d at 590. Fibromyalgia is thus "diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Id.*

"The Agency and the courts have determined that fibromyalgia is a real disorder that can impact a person's ability to work." *Slaff v. Colvin*, 2015 WL 404226, at *2 (C.D. Cal. Jan. 28, 2015) (citing *Benecke*, 379 F.3d 587 (9th Cir. 2004)); Social Security Ruling 12-2, Evaluation of

Fibromyalgia, 2012 WL 3104869, *2 ("[Fibromyalgia is a [medically determinable impairment]

when it is established by appropriate medical evidence. [Fibromyalgia] can be the basis for a

finding of disability."). SSR 12-2p "provides guidance on how we develop evidence to establish

that a person has a medically determinable impairment (MDI) of fibromyalgia (FM), and how we

evaluate FM in disability claims and continuing disability reviews under titles II and XVI of the

Social Security Act (Act)." 2012 WL 3104869, at *1. A claimant must provide evidence that a

licensed physician reviewed her medical history, conducted a physical examination, and made a

fibromyalgia diagnosis. *Id.* at *2. The physician must also provide evidence which satisfies one

of two alternate diagnostic criteria: the 1990 American College of Rheumatology Criteria for the

Classification of Fibromyalgia ("1990 Criteria"), or the 2010 American College of Rheumatology

Preliminary Diagnostic Criteria ("2010 Criteria"). *Id.* at *2-3. Under the 1990 Criteria, the

evidence must show: (1) "a history of widespread pain . . . that has persisted . . . for at least 3

months;" (2) at least 11 positive tender points, found both bilaterally and above and below the

waist; and (3) evidence that other disorders which could cause the symptoms were excluded. *Id.* at

*3. Under the 2010 Criteria, the evidence must show: (1) a history of widespread pain; (2)

repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions;

and (3) evidence that other disorders which could cause the symptoms were excluded. *Id.* Finally,

the physician's diagnosis must not be "inconsistent with the other evidence in the person's case

record." *Id.* at *2.

At step two of the sequential disability analysis, the ALJ found the evidence did not

establish that fibromyalgia was a medically determinable impairment. AR 19, 20. In so finding,

the ALJ noted that providers documented Plaintiff's self-reports of fibromyalgia, but her

statements were insufficient to establish a medically determinable impairment. *Id.*; *see* 20 C.F.R.

§ 404.1521 (impairment "must be established by objective medical evidence from an acceptable

medical source," not "symptoms, a diagnosis, or a medical opinion"); *Ukolov v. Barnhart*, 420

F.3d 1002, 1006 (9th Cir. 2005) (portions of treatment records that are based solely on the

claimant's own "perception or description" of his problems do not support a finding of a medically

determinable impairment). The ALJ also observed that, prior to Plaintiff's date last insured, the

8

1    record did not contain findings that satisfied either the 1990 or the 2010 Criteria.  AR 19, 20; *see*

2    SSR 12-2p; *Revels*, 874 F.3d at 656-57.

3          Although Plaintiff disagrees with this finding, she does not establish any error in the ALJ's

4    findings that requires reversal.  For example, she has not shown that any provider documented

5    least 11 positive tender points out of a possible 18 tender point sites (1990 Criteria), recorded

6    widespread pain in all four quadrants of the body and axial skeletal pain for at least 3 months

7    (1990 Criteria, 2010 Criteria), or excluded other disorders that could cause the symptoms or signs

8    (1990 Criteria, 2010 Criteria).  Instead, she cites a handful of references to trigger points in

9    Exhibit 2F, treatment she received for other conditions, and her self-reported complaints.  Pl.'s

10   Mot. at 6.  As the Ninth Circuit has explained, an ALJ properly rejects an assessment of

11   fibromyalgia where the record contains no explanation of how the claimant met either the 1990 or

12   2010 Criteria, "such as identifying the requisite tender points or ruling out other causes."  *Ford*,

13   950 F.3d at 1155 n.7.  That is the case here, where no physician made findings sufficient to satisfy

14   either set of criteria.  *See id.* ("Dr. Medani's diagnosis consisted only of the single word

15   'fibromyalgia,' and did not explain how Ford met either the 1990 or the 2010 criteria" and

16   claimant did not point to evidence in the record showing that criteria were satisfied).

17         Plaintiff cites to *Revels* in support of her argument that the ALJ had "an apparent

18   fundamental misunderstanding of fibromyalgia."  Pl.'s Mot. at 5.  In *Revels*, the Ninth Circuit

19   confirmed that, when evaluating a claim of disability based on fibromyalgia, the ALJ must

20   consider a claimant's longitudinal record and determine whether the 1990 Criteria or the 2010

21   Criteria are satisfied.  874 F.3d at 656-57.  The ALJ did so here, *see* AR 19, 20, and Plaintiff does

22   not point to evidence in the record showing that the criteria were satisfied.  *See Ford*, 950 F.3d at

23   1155 n.7.  Indeed, Plaintiff's selective focus on Exhibit 2F, which reflected chiropractic treatment

24   in March 2016 and once in September 2016, simply proves the point that there were no positive

25   tender point findings in the remainder of the longitudinal record from her alleged onset date of

26   December 1, 2011 through her date last insured of December 31, 2016.  Accordingly, the Court

27   finds the ALJ properly considered Plaintiff's alleged fibromyalgia, and her reliance on Exhibit 2F

28   does not warrant reversal.

United States District Court
Northern District of California

1    Regardless, even if the Court were to find the ALJ erred, any such error would be

2    harmless.  After finding that fibromyalgia was not a medically determinable impairment, the ALJ

3    proceeded with the sequential disability analysis and considered the condition in assessing

4    Plaintiff's RFC.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (where ALJ erred by

5    omitting an impairment at step two, any error was harmless where the ALJ considered the

6    impairment later in the sequential analysis); *Miner v. Berryhill*, 722 F. App'x 632, 633 (9th Cir.

7    2018) ("The ALJ's failure to list fibromyalgia as a severe impairment at step two is at most

8    harmless error" because "the ALJ found that other of [claimant's] ailments constituted serious

9    impairments, and consequently, in accordance with the governing regulations, moved on to the

10   subsequent evaluation steps") (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).

11   Further, neither Exhibit 2F nor any other records that Plaintiff cites identified restrictions

12   or limitations that the ALJ should have considered in assessing Plaintiff's RFC.  Thus, Plaintiff

13   has failed to meet her burden of establishing harmful error.  *See Champagne*, 582 F. App'x at 697

14   (finding no error in ALJ's consideration of medical evidence that did not identify functional

15   limitations, noting claimant "identified no additional medically necessary limitation that should

16   have been included in the [RFC]") (citing *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009)

17   ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the

18   agency's determination.")); *see generally Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

19   (noting "the general principle that an ALJ's error is harmless where it is 'inconsequential to the

20   ultimate nondisability determination'") (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.

21   1155, 1162 (9th Cir. 2008)).

22   For all of these reasons, the Court finds the ALJ properly considered the medical evidence,

23   and the Court must therefore uphold the ALJ's findings.

24   **C.    Plaintiff's Subjective Symptom Allegations**

25   Plaintiff next argues the ALJ erred in the assessment of her subjective symptoms.  Pl.'s

26   Mot. at 6-8.  The ALJ determined "claimant's medically determinable impairments could

27   reasonably be expected to cause the alleged symptoms; however, the claimant's statements

28   concerning the intensity, persistence and limiting effects of these symptoms are not entirely

United States District Court
Northern District of California

1    consistent with the medical evidence and other evidence in the record." AR 20. As discussed

2    above, the ALJ also stated there was no evidence that established fibromyalgia as a medically

3    determinable impairment. *Id.* Plaintiff argues the ALJ erred with respect to the fibromyalgia

4    findings, "and this error infected the subjective symptom analysis." Pl.'s Mot. at 6.

5           **1.**       **Legal Standard**

6          "In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ

7    must engage in a two-step analysis. 'First, the ALJ must determine whether the claimant has

8    presented objective medical evidence of an underlying impairment which could reasonably be

9    expected to produce the pain or other symptoms alleged.'" *Vasquez v. Astrue*, 572 F.3d 586, 591

10   (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). And

11   second, "if the claimant meets the first test and there is no evidence of malingering, the ALJ can

12   only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear

13   and convincing reasons' for the rejection." *Vasquez*, 572 F.3d at 591 (quoting *Smolen v. Chater*,

14   80 F.3d 1273, 1282 (9th Cir. 1996)). "At the same time, the ALJ is not required to believe every

15   allegation of [symptoms], or else disability benefits would be available for the asking, a result

16   plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (citation and internal

17   quotations omitted). Along the same lines, "an individual's statements of symptoms alone are not

18   enough to establish the existence of a physical or mental impairment or disability." SSR 16-3P,

19   2016 WL 1119029, at *2.

20         In determining whether an individual's symptoms will reduce her capacities to perform

21   work-related activities or abilities to function, "the ALJ may consider inconsistencies either in the

22   claimant's testimony or between the testimony and the claimant's conduct; unexplained or

23   inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and

24   whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina*,

25   674 F.3d at 1112 (citations and internal quotation marks omitted). "[I]f an individual's statements

26   about the intensity, persistence, and limiting effects of symptoms are inconsistent with the

27   objective medical evidence and the other evidence, [the ALJ] will determine that the individual's

28   symptoms are less likely to reduce his or her capacities to perform work-related activities or

1  abilities to function independently, appropriately, and effectively in an age-appropriate manner."

2  SSR 16-3p, 2016 WL 1119029, at *7.

3          **2.      Analysis**

4          The Court finds the ALJ provided clear and convincing reasons for discounting Plaintiff's

5  testimony.  The ALJ summarized Plaintiff's statements about her symptoms, including fatigue,

6  exhaustion, body pain, an inability "to do anything for more than 20-30 minutes," difficulty

7  handling stress, depression, anxiety, difficulty moving her head, tiredness, and achiness.  AR 20.

8  The ALJ assessed a restrictive RFC for light exertion work, but he reasonably found the evidence

9  did not support the degree of limitation that Plaintiff alleged.  AR 19-22.  In reaching this

10  conclusion, the ALJ first incorporated his step two finding that the evidence did not establish

11  fibromyalgia was a medically determinable impairment because the record did not contain

12  findings sufficient to satisfy either the 1990 or 2010 Criteria.  AR 19, 20; *see Ford*, 950 F.3d at

13  1155 n.7.

14          Second, the ALJ noted the evidence showed Plaintiff's conditions, including fibromyalgia,

15  were well controlled with treatment and did not support her claims of pain or fatigue to the extent

16  alleged.  AR 20.  For example, in a June 2014 treatment visit for fibromyalgia and knee

17  complaints, Plaintiff's pain was "generally well controlled," she had "minimal and tolerable" side

18  effects, and she could perform activities of daily living.  AR 288-89.  Providers made similar

19  observations on other visits prior to her date last insured.  *See* AR 301 (Oct. 2013: "Pain is well

20  controlled.  Medication is working well.  Side effects are minimal and tolerable"); AR 303 (Jun.

21  2013: same); AR 308 (Dec. 2012: "pain remains adequately controlled"); AR 310 (Sept. 2012:

22  "Pain is well controlled.  Medication is working well.  Side effects are minimal and tolerable");

23  AR 316 (Jun. 2012: same); AR 322 (Apr. 2012:"fibromyalgia generally controlled" with

24  medication)).  *See* 20 C.F.R. § 404.1529(c)(3) (ALJ properly considered treatment when

25  evaluating symptoms); *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (an

26  impairment that can be controlled effectively with treatment is not disabling); *Celaya v. Halter*,

27  332 F.3d 1177, 1181 (9th Cir. 2003) (in discounting pain complaints, ALJ "reasonably noted"

28  evidence that pain had come under control).

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1    Third, the ALJ noted that, contrary to Plaintiff's claims of debilitating fatigue, she did not

2  consistently endorse fatigue on visits to providers.  AR 20-21; *see, e.g.*, AR 320, 322, 324

3  (denying fatigue)).  And, even when Plaintiff complained of fatigue, providers did not recommend

4  treatment commensurate with a disabling condition; instead, they refilled Plaintiff's medication

5  and advised her to exercise.  AR 21; *see, e.g.*, AR 325, 408, 415, 416, 420, 426, 434, 439, 446-47,

6  452, 458.  *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ appropriately

7  discounted subjective complaints where claimant's allegations of disabling symptoms were

8  inconsistent with the "'minimal, conservative treatment' that she received").

9    Relatedly, when providers assessed untreated sleep apnea and recommended use of a

10  CPAP, Plaintiff thought it "would be too much hassle" and declined to use it regularly.  AR 470,

11  490; *see also* AR 494 (urging Plaintiff to "think about the CPAP again"); AR 509 (noting Plaintiff

12  "has been very resistant to treatment" for sleep apnea); AR 522 (noting inconsistent CPAP use);

13  AR 552 (noting Plaintiff "is not using the CPAP regularly")).  Thus, to the extent the record

14  reflected fatigue, the ALJ reasonably considered that Plaintiff was not complying with treatment

15  recommendations for sleep apnea.  AR 21; *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th

16  Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility," including

17  "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

18  of treatment").

19    Fourth, the ALJ found the record did not support Plaintiff's allegations of symptoms or

20  limitations from mental impairments during the period prior to her date last insured.  AR 21.  The

21  ALJ considered Plaintiff's allegations of depression and anxiety at step two but found those

22  impairments did not cause more than minimal limitation in Plaintiff's ability to perform basic

23  mental work activities and, thus, were not severe.  AR 17-18.  The ALJ further considered

24  Plaintiff's anxiety and depression when assessing her RFC but found the evidence did not support

25  her allegations of mental functional limitations.  AR 21.  Plaintiff endorsed depression

26  infrequently and informed a provider that it had resolved.  AR 21, 318, 404 (noting Plaintiff "feels

27  she is enjoying life")).  Plaintiff also endorsed anxiety, but as the ALJ pointed out, it was largely

28  related to situational stressors.  AR 21; *see, e.g.*, AR 318, 412, 478, 484.  Providers prescribed

1    medication but performed no further evaluation or work up for anxiety.  AR 21; *see, e.g.*, AR 316-

2    17, 318 (noting anxiety was "generally acceptably treated" with medication)).  In her motion,

3    Plaintiff largely relies upon her hearing testimony, occasional mental health complaints that

4    providers documented, or lists of diagnoses.  Pl.'s Mot. at 7-8.  However, she does not address the

5    fact that providers often reported normal mental status findings and did not refer Plaintiff for

6    psychiatric evaluation.  AR 21; *see, e.g.*, AR 302 (alert and oriented, with intact cognitive

7    functioning, good eye contact, good insight and judgment, and normal mood and affect); AR 312

8    (same); AR 407 (appropriate mood and affect, normal insight and judgment, and intact memory);

9    AR 434 (appropriate mood and affect, mildly anxious, fair insight and judgment, and intact

10   memory); AR 473 (same); AR 525 (same)).

11        The ALJ also considered references in the record to "mild cognitive impairment" on

12   SLUMS testing[4] in 2014 but noted that providers believed this was due to polypharmacy and

13   recommended changes in medication and diet as well as exercise.  AR 22; *see, e.g.*, AR 417-20.

14   Providers did not document specific cognitive problems or treatment for same, and a later SLUMS

15   test revealed improved mental functioning, with a score of 29/30.  AR 22, 660; *see also* AR 302

16   (intact cognitive functioning); AR 312 (same); AR 407 (appropriate mood and affect, normal

17   insight and judgment, and intact memory); AR 415 (appropriate mood and affect, mild anxious,

18   fair insight and judgment, and intact memory); AR 426 (same); AR 434 (same); AR 446 (same);

19   AR 473 (same); AR 525 (same)).  Thus, the ALJ reasonably considered that the evidence did not

20   support Plaintiff's claims of disabling symptoms or limitations from mental impairments.  *See* 20

21   C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence

22   and the extent to which there are any conflicts between your statements and the rest of the

23   evidence . . . .").

24        Fifth, the ALJ noted the evidence did not support Plaintiff's claims of symptoms involving

25

26   _____

27   [4] "The Saint Louis University Mental Status exam is an assessment tool for mild cognitive
     impairment and dementia and was developed in partnership with the Geriatrics Research,
     Education and Clinical Center at the St. Louis Veterans Administration Medical Center."

28   https://www.slu.edu/medicine/internal-medicine/geriatric-medicine/aging-
     successfully/assessment-tools/mental-status-exam.php

United States District Court
Northern District of California

United States District Court
Northern District of California

1    her back, hand, wrist, or in moving her head and neck.  AR 21.  In this regard, the ALJ noted that

2    spine imaging showed only mild or minor findings.  *Id.*; *see* AR 428 (thoracic spine x-rays showed

3    "minimal spondylosis" with "no acute abnormalities"); AR 429 (lumbar spine x-ray was

4    "essentially unremarkable"); AR 524 (noting "only mild spondylosis" in thoracic and lumbar

5    spine x-rays)).  Similarly, the ALJ noted that objective evidence did not corroborate alleged hand

6    or wrist pain.  AR 21; *see* AR 536 (noting no synovitis); AR 427 (suggesting hand complaints

7    were related to gut, and recommending an elimination diet)).  The ALJ also pointed out that there

8    was no support for Plaintiff's claim of problems moving her head and neck.  AR 21.  Although

9    Plaintiff claimed to experience such symptoms while working, her supervisor did not mention any

10   such problems.  AR 21; AR 280.  Moreover, providers did not recommend work up or treatment

11   for head or neck complaints, such as cervical spine imaging, during the time period relevant to

12   Plaintiff's claim.  Given this record, the ALJ properly considered inconsistencies between the

13   degree of physical limitation that Plaintiff alleged and the evidence in the record.  *See* 20 C.F.R. §

14   404.1529(c)(2) ("Objective medical evidence … is a useful indicator to assist us in making

15   reasonable conclusions about the intensity and persistence of your symptoms …."); *Rollins v.*

16   *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (in fibromyalgia case, although "subjective pain

17   testimony cannot be rejected on the sole ground that it is not fully corroborated by objective

18   medical evidence, the medical evidence is still a relevant factor in determining the severity of the

19   claimant's pain and its disabling effects"); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir.

20   2001) (rejecting claimant's allegations where "neurological and orthopedic evaluations have

21   revealed very little evidence of any significant disabling abnormality").

22          Plaintiff argues the ALJ may not rely exclusively on objective medical evidence in

23   discounting her claims (Pl.'s Mot. at 7), but that is not what happened here.  While it is true an

24   ALJ may not discount a claimant's subjective complaints based solely on a lack of objective

25   medical evidence to fully corroborate the alleged severity of pain, the ALJ "may find the

26   claimant's allegations of severity to be not credible" based on specific findings and other evidence

27   that is in the record.  *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); *Burch*

28   *v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) ("Although lack of medical evidence cannot

United States District Court
Northern District of California

1   form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his

2   credibility analysis."). Here, the ALJ properly considered the objective evidence as a whole. *See,*

3   *e.g., Smith v. Berryhill*, 752 F. App'x 473, 475-76 (9th Cir. 2018) (in fibromyalgia case, ALJ

4   appropriately discounted physician's opinion that was unsupported by clinical evidence); *Reichley*

5   *v. Berryhill*, 723 F. App'x 540, 541 (9th Cir. 2018) (ALJ properly concluded that fibromyalgia

6   questionnaire was not supported by objective medical evidence); *Castle v. Berryhill*, 2018 WL

7   4904778, at *4 (C.D. Cal. Oct. 9, 2018) ("A diagnosis of fibromyalgia is not a free disability card

8   that renders all medical evidence irrelevant for all purposes.") (quoting *Melendez v. Astrue*, 2011

9   WL 6402287, at *6 (C.D. Cal. Dec. 20, 2011) ("The fact that objective medical evidence cannot

10  prove the existence of fibromyalgia does not mean it is irrelevant or cannot used to demonstrate a

11  lack of functional limitations during clinical examination . . . ."). Moreover, contrary to Plaintiff's

12  assertion that her activities were "quite limited . . . per her physicians" (Pl.'s Mot. at 7), her

13  physicians reported that she could perform activities of daily living, as the ALJ noted. AR 20,

14  288, 303, 310, 316, 522. And, even if her activities were not particularly extensive, the ALJ's

15  conclusion that she was not as limited as she claimed was a reasonable and valid basis for

16  discounting her testimony. *See Molina*, 674 F.3d at 1112-13 ("Even where those activities suggest

17  some difficulty in functioning, they may be grounds for discrediting the claimant's testimony to

18  the extent that they contradict claims of a totally debilitating impairment").

19         In sum, the Court finds the ALJ validly concluded that the evidence supported a finding

20  that Plaintiff could perform light work. Although Plaintiff highlights select pieces of evidence to

21  argue she was more limited, it is not the Court's role to second guess the ALJ's conclusions or

22  substitute its judgment for the ALJ's. *See Ford*, 950 F.3d at 1149 ("the ALJ 'is responsible for

23  determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities'")

24  (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Because the ALJ's findings

25  were reasonable and well supported by substantial evidence in the record, the Court must affirm,

26  even if other interpretations of the evidence are possible. *See Woods*, 32 F.4th at 788 ("Where

27  evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that

28  must be upheld.") (quoting *Burch*, 400 F.3d at 679). The ALJ's discounting of some of Plaintiff's

testimony about the severity of her symptoms is thus not a basis for reversal or remand.

**D.     Lay Witness Testimony**

Plaintiff's final argument is that the ALJ failed to properly consider third-party statements from her friend and her co-worker.  Pl.'s Mot. at 8-9.  The friend completed a third-party function report, describing how Plaintiff had deteriorated over 10 years, had gone from a very social person to one who was quite isolated, took four times longer than normal to perform simple tasks, and did not want anyone to see her in her condition.  AR 210-17.  Plaintiff argues an ALJ must give "reasons germane to each particular witness," but "the ALJ offered **no reason** for essentially or discounting [her] friend's statement."  Pl.'s Mot. at 8.

Plaintiff's co-worker provided an email statement that he was Plaintiff's supervisor until 2011, he recalled times when she complained about fatigue and muscle aches, and there were times when he witnessed her placing her head on her desk and would often spend her break resting on the couch in the women's restroom.  AR 280.  Plaintiff argues the ALJ improperly discounted this statement because it "bolsters her allegations that she felt fatigued, and provides additional evidence of this co-occurring condition noted in SSR 12-2p.  She testified that she would lay her head in her lap while she was still working."  Pl.'s Mot. at 8-9.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citation omitted).  Such testimony is valuable precisely because it provides additional information that is not necessarily reflected in the medical records, including how an individual is able to function in the community and with what level of support.  *See Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 975-76 (9th Cir. 2000).  Thus, "[i]n evaluating the intensity and persistence" of symptoms, the ALJ "consider[s] all of the available evidence," including that from "medical sources and nonmedical sources about how [a claimant's] symptoms affect [them]."  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

The 2017 regulations adjusted requirements for an ALJ's consideration of nonmedical evidence, and the Ninth Circuit has not yet addressed whether the "germane reasons" requirement for discounting lay witness testimony survives the enactment of the new regulations.  20 C.F.R. §§

17

404.1520c(d), 416.920c(d); *see also Caleb H. v. Saul*, 2020 WL 7680556, at *8 (E.D. Wash. Nov. 18, 2020) ("[T]he ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony."); *Mary M. v. Kijakazi*, 2022 WL 891445, at *6 (S.D. Cal. Mar. 25, 2022) (holding that ALJs are not required to articulate specific reasons for their findings about the persuasiveness of nonmedical source testimony, but instead must simply show that they considered such evidence in deciding the claim); *but see Joseph M.R. v. Comm'r of Soc. Sec.*, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019) ("Although § 404.1520c(d) states the Commissioner is 'not required to articulate how we consider evidence from nonmedical sources' using the same criteria for medical sources, it does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements."); *Alice B. v. Kijakazi*, 2021 WL 6113000, at *8 (N.D. Cal. Dec. 27, 2021) (noting that the Ninth Circuit's germane reasons requirement for evaluating lay witness testimony has always been a different (and lower) standard than that required for evaluating medical opinions and therefore the germane reasons standard still applies because '[t]he new regulations providing that lay opinions do not need to be evaluated under the same standards as medical opinions is therefore consistent with the Ninth Circuit's germane reasons standard.'").

The Court need not resolve the applicable standard, though, because even assuming the ALJ was required to provide germane reasons, his failure to do so in this case was harmless.  *See, e.g., M.P. v. Kijakazi*, 2022 WL 1288986, at *7-8 (N.D. Cal. Apr. 29, 2022) (concluding that court need not resolve issue regarding the standard); *Madison L. v. Kijakazi*, 2021 WL 3885949, at *4 (N.D. Cal. Aug. 31, 2021) (same).  Where a lay witness's testimony is similar to the claimant's own testimony regarding her subjective complaints, the ALJ's reasons given to reject the claimant's testimony are deemed sufficiently germane reasons to reject the lay witness testimony. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."); *Molina v. Astrue*, 674 F.3d 1104, 1111, 1122 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §

18

404.1502(a) (finding an ALJ's failure to address a nonmedical source at all harmless where ALJ addressed claimant's similar testimony); *Caleb H.*, 2020 WL 7680556, at *8.

Here, as discussed above, the ALJ properly considered Plaintiff's testimony.  The lay witnesses identified similar symptoms and limitations as Plaintiff alleged, such as fatigue, aches, body pain, limited ability to perform physical activities, and problems with memory and concentration.  AR 189-96, 210-17, 280.  Thus, any error in not separately discussing the lay witnesses' statements was harmless.  *See Valentine*, 574 F.3d at 694; *Mary M.*, 2022 WL 891445, at *6 (holding that reasons proffered for rejecting a claimant's testimony applied equally to her husband's testimony even though the ALJ had not articulated any reasons regarding discounting of husband's testimony); *Madison L.*, 2021 WL 3885949, at *4 (concluding that ALJ's reasons for rejecting claimant's testimony also provided sufficient reasons for rejecting claimant's mother's testimony where the mother did not testify to any limitations beyond those testified to by the claimant herself); *Jenkins v. Saul*, 2020 WL 5760357, at *4 (N.D. Cal. Sept. 28, 2020) ("[The lay witness] did not testify to any limitations beyond those described by [plaintiff] herself.  'In such a situation, the ALJ also gives germane reasons for rejecting other lay witness testimony where it is found to be similar to claimant's.'") (quoting *Bennet v. Colvin*, 202 F. Supp. 3d 1119, 1130-31 (N.D. Cal. 2016)).  For these reasons, the Court finds that any err in the ALJ's consideration of lay witness testimony was harmless, and the decision must therefore be affirmed.

## VI.   CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: August 26, 2022

THOMAS S. HIXSON
United States Magistrate Judge